IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IOWA NETWORK SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | Case No. 09-2393-CM |
| SPRINT COMMUNICATIONS ) | |
| COMPANY, L.P., SPRINT NEXTEL ) | |
| CORPORATION, SPRINT UNITED ) | |
| MANAGEMENT COMPANY, and ) | |
| SPRINT CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Iowa Network Services, Inc. brings this action against four Sprint companies, claiming that the Sprint companies (collectively "defendants") breached plaintiff's Centralized Equal Access tariffs. Plaintiff characterizes the action as a collection action arising from defendants' failure to pay for services that plaintiff provided to defendants. Defendants disagree about the nature of the action, and contend that the issues in this action deal with "matters of policy and regulation critical to the Iowa telecommunications industry." (Doc. 21, at 1.) On January 26, 2010, this court announced its intention to *sua sponte* transfer this case to the Southern District of Iowa and gave the parties an opportunity to respond. The court granted the parties until February 9, 2010 to respond to the court's order. The parties timely responded, and the court is now prepared to rule.

## I. Factual Background

Plaintiff operates switching and transport facilities that provide "access service" to long distance companies, including defendants. Plaintiff's access service is known as "Centralized Equal

Access." This service provides defendants with the use of plaintiff's fiber optic cable network and access tandem switch, which allows defendants to complete long distance calls to rural areas where local phone companies (called "local exchange carriers" or "LECs") provide services. Essentially, plaintiff serves as a middleman between defendants and LECs. Plaintiff's rates for access services are contained in tariffs filed with the Federal Communication Commission, the Iowa Utilities Board, and the Nebraska Public Service Commission.

Between February 2008 and the present, defendants have placed service orders to plaintiff, and plaintiff has sent invoices to defendants. On March 31, 2008, an employee of defendants notified plaintiff that defendants would not pay plaintiff for the use of plaintiff's facilities to complete defendants' long distance phone calls for services beginning on February 1, 2008.

Defendants claim that several LECs, predominantly in Iowa, have been engaging in a practice known as "traffic pumping." The LECs allegedly conspired with providers of free services (such as conference services, international calling, or chat line services) to increase the volume of interexchange calls routed through the rural areas. By increasing the call volumes, the LECs could get more access service charges from defendants. According to defendants, the LECs would then give kickbacks to the providers of free services. Defendants claim that plaintiff then charged defendants additional centralized equal access charges based on the pumped minutes. Defendants contend that plaintiff knew of the traffic pumping, allowed the scam, facilitated the practice, and "advised" regarding the scam.

As a result of the above-described allegations of traffic pumping, defendants have not paid plaintiff for access services since February 1, 2008.

**II. Discussion**

The court considers whether to transfer this case to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." When deciding whether to transfer a case under § 1404(a), the court considers a number of factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (internal quotation marks and citation omitted). Unless these factors weigh strongly in the defendant's favor, the "plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)). Defendants, as the parties moving to transfer the case, bear the burden of establishing the inconvenience of the existing forum. *Id.* (citation omitted).

**III. Analysis**

  ***A. Whether the Action Could Have Been Brought in the Southern District of Iowa***

As a threshold matter, the court must first consider whether this case could have been brought in the Southern District of Iowa. *See generally* 28 U.S.C. § 1404(a); *Murray v. Sevier*, 156 F.R.D. 235, 251–52 (D. Kan. 1994). Plaintiff has previously argued that Sprint Nextel Corporation and Sprint Corporation have been integrally involved in the transactions and dealings at issue in this

case. Despite this position, plaintiff now contends that "[t]he sworn declarations and other information that Sprint has filed with this Court raise real questions as to whether defendants Sprint Nextel Corporation and Sprint Corporation would have been amenable to service if [plaintiff] had filed its complaint in the Southern District of Iowa." (Doc. 82, at 5.) Plaintiff cannot have it both ways. Plaintiff survived summary judgment against defendants Sprint Nextel Corporation and Sprint Corporation by presenting evidence that was sufficient to controvert all of Sprint Nextel Corporation's and Sprint Corporation's evidence indicating that they should not be parties to this case. (*See* Doc. 81, at 2.) It seems disingenuous for plaintiff to now suggest that Sprint Nextel Corporation and Sprint Corporation had only tangential ties to Iowa through purchasing services by mail or phone.

If the Southern District of Iowa were to examine whether it had personal jurisdiction over defendants Sprint Nextel Corporation and Sprint Corporation, it would only look to whether the nonmoving party established a prima facie showing of jurisdiction. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004). Based on the facts that plaintiff has alleged and the evidence presented, the court determines that this case could have been brought in the Southern District of Iowa.

### B. Plaintiff's Choice of Forum

Although the court considers plaintiff's choice of forum, here plaintiff's choice is given less weight because it is not plaintiff's place of residence. *Baker v. Via Christi Reg'l Med. Ctr.*, No. 06-2168-KHV, 2007 WL 913925, at *1 (D. Kan. Mar. 23, 2007). Plaintiff neither resides nor provides services in Kansas. Rather, plaintiff is an Iowa corporation with its principal place of business in Iowa. Plaintiff provides interstate access service for long distance calls originating from or terminating in Iowa, Illinois, Minnesota, Missouri, Nebraska, and South Dakota—but not Kansas.

Accordingly, this factor weighs only slightly in favor of plaintiff.

### C. *Accessibility of the Witnesses and Other Sources of Proof*

Plaintiff claims that because this case is about defendants not paying their bills, nearly all of the relevant evidence and witnesses are in Kansas: namely, defendants' employees who reviewed the bills, analyzed the tariffs and decided to breach them, and improperly disputed plaintiff's bills. To some degree, this is true; defendants' principal place of business is in Kansas. But this view of the dispute before the court is incomplete. Plaintiff may have hoped to avoid addressing the merits of its tariffs by filing suit in this court, but now that it has asked this court to order defendants to pay, plaintiff cannot avoid presentation of the full dispute. And the full dispute includes a disagreement over whether the tariffs are proper. This means that the scope of relevant evidence far exceeds that available in Kansas. Moreover, all indications are that the evidence is primarily available in Iowa. Plaintiff's records and personnel will both be involved in discovery, and neither is located in Kansas. Defendant represents that a significant amount of the potential evidence in this case is in the hands of non-parties in Iowa. In addition, other parties may have an interest in this case, including the Iowa Attorney General through the Iowa Office of Consumer Advocate. It appears to the court that Iowa—not Kansas—has a large regulatory stake in the outcome of this case.

Plaintiff alleges that two key witnesses who are former Sprint employees cannot be compelled to appear in Iowa: Karyn Nesby and Greg Costigan. But again, the testimony that plaintiff alleges that Ms. Nesby and Mr. Costigan will provide centers on defendants' service orders and the alleged breach of plaintiff's tariffs. If this case were only about defendants not paying their bills, plaintiff's argument would carry more weight. The potential inability of plaintiff to present the live testimony of these two witnesses does not outweigh all of the potential nonparty witnesses residing in Iowa, particularly when it is the nonparty witnesses who likely have information about

the minutes of telephone traffic that comprise the transactions for which defendants are being billed. Notably, none of this traffic was delivered to Kansas or processed in Kansas.

The court determines that this factor weighs in favor of transfer.

### D. *Enforceability of Judgment, Fair Trial, Docket Congestion*

Plaintiff argues that this factor weighs against transfer because the Iowa federal court lacks personal jurisdiction over several of defendants. The court has already addressed this argument above. Plaintiff also argues that this court should not transfer the case because of docket congestion in the Southern District of Iowa. Plaintiff argues that it deliberately chose the District of Kansas because it wanted to avoid the Southern District of Iowa's docket congestion. Plaintiff represents that it would suffer serious financial injury if it has to wait a long amount of time before resolving this case.

The court notes that at the time plaintiff filed this case, several similar and/or related Iowa cases were stayed pending resolution of a related case before the Iowa Utilities Board. The Iowa Utilities Board has now issued its decision. This change in circumstances should address plaintiff's concerns that its case will not be heard in Iowa in a timely manner. Moreover, for the 12-month period ending September 30, 2008, the District of Kansas's weighted filings number per judgeship was 395. Federal Court Management Statistics (2008), www.uscourts.gov/fcmstat/index.html. This places the District of Kansas 57th among district courts in the nation. *Id.* The median number of months for civil cases from filing to disposition was 9.1 months. *Id.* For the Southern District of Iowa, the weighted filings number per judgeship was 400, placing the district 54th in the nation. *Id.* The median number of months for civil cases from filing to disposition was 10.6 months. *Id.* These numbers are not so disparate as to make the court believe that docket congestion should play a significant role in deciding whether to transfer this case.

-6-

### *E. Conflicts of Law and Advantages of a Local Court*

Defendants are already involved in a dispute over the LEC's portion of the access charges for the allegedly "pumped" minutes. This dispute is in the United States District Court for the Southern District of Iowa and before the Iowa Utilities Board. The instant case involves the "other half" of the transactions. The minutes of traffic in this case are the same minutes involved in the Iowa cases. This case merely involves the additional centralized equal access charge that applied to the same minutes.

The Southern District of Iowa already has cases pending with the issues and law involved. The Iowa Utilities Board has ruled that the minutes of traffic were not proper intrastate. The Southern District of Iowa now has cases ready to proceed regarding the interstate traffic. It would be illogical and inefficient to separate this piece of the litigation from the "other side" of the litigation. Iowa has a much more significant interest in this matter than Kansas has. The court is also concerned about the potential for inconsistent rulings, especially if this case proceeds in Kansas at a faster pace than the cases in Iowa. Even though the tariffs are different and the parties involved are different, the same minutes are at issue. The court believes that it would be most appropriate for one court to determine the propriety of charging for those minutes.

In addition, plaintiff has also brought claims that will require reference to Iowa law (as well as Nebraska). While this court is capable of applying the law of another state, this factor still weighs in favor of transfer.

### *F. All Other Considerations*

The District of Kansas could make sense as a forum for this case if the case were truly as limited as plaintiff seeks to portray it. If this were a case about plaintiff not getting paid—and the reasons plaintiff did not get paid were irrelevant—then perhaps the location where the decision to

-7-

deny payment was made would be of more significance.  But here, the location where defendants decided not to pay plaintiff is fairly insignificant considering all the issues involved in this case.  The bigger, broader issue is whether the money is actually owed.  Resolution of this question depends on evidence, events, and witnesses located in Iowa—not Kansas.

Plaintiff alleges that it is defendants, not plaintiff, who is engaging in forum shopping.  (Doc. 30, at 14.)  Plaintiff suggests that defendants' transfer request merely seeks to delay resolution of this case.  Plaintiff argues that it is not a party to the cases pending in Iowa, and claims that there is no risk of inconsistent rulings because the cases involve the construction of different tariffs.  According to plaintiff, "The pending Iowa court proceedings simply have no relevance to non-party [plaintiff] and [plaintiff's] collection action seeking payment from Sprint for Centralized Equal Access Service."  (Doc. 30, at 17.)  The court respectfully disagrees.  The court does not believe that the factual circumstances of this case are as isolated as plaintiff would like them to be.  Ultimately, it is the interrelatedness of the cases and the overarching issue of whether the minutes involved traffic pumping that outweighs all other considerations for the court.  The court is mindful that the plaintiff's choice of forum should rarely be disturbed, but here, plaintiff's choice only makes sense if this is a simple collection action.  It is not.  This case likely will involve significant policy concerns of Iowa, and the Southern District of Iowa is the more appropriate forum to make those decisions.  It will be a more convenient forum for parties, witnesses, and interested parties from Iowa.  The court will also have the benefit of looking at the complete picture of the transactions at issue.  The case should therefore be transferred to the Southern District of Iowa.

**IV.  Motion to Stay Deadlines (Doc. 84)**

On February 9, 2010, defendant filed a motion to stay discovery and scheduling deadlines pending the court's decision whether to transfer the case.  That motion is not yet ripe for ruling.

Nevertheless, the court finds that the motion is moot in light of the transfer of the case. The Southern District of Iowa will set a new schedule and deadlines for the case. Defendants' motion is denied as moot.

**IT IS THEREFORE ORDERED** that this action be transferred to the Southern District of Iowa. The Clerk of the Court is ordered to transfer the case to the United States District Court for the Southern District of Iowa.

**IT IS FURTHER ORDERED** that Defendants' Motion to Suspend/Toll Deadlines Pending Transfer (Doc. 84) is denied as moot.

Dated this 8th day of March 2010, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**